UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MCWILLIAMS BALLARD, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 08-1670 (ESH) |
| BROADWAY MANAGEMENT COMPANY, INC., *et. al.*, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case involves a dispute between a real estate development corporation and a firm hired to market and sell units in a new condominium development and the subsequent financial failure of that development. Plaintiff McWilliams Ballard, Inc. has moved to amend its complaint primarily for the purpose of adding new individual and corporate defendants based on the theory that they are the alter egos of the corporations involved in the contract and condominium project. Before the Court are plaintiff's motion, defendants' opposition, plaintiff's reply, defendants' surreply, and plaintiff's opposition to defendants' surreply.[1] For the reasons set forth herein, this Court grants plaintiff's motion.

### BACKGROUND

Plaintiff originally named six corporations as defendants ("Original Broadway LLCs"), but it now seeks to amend its complaint to add as defendants twelve corporations ("New Broadway LLCs") (collectively, "the Broadway LLCs") and five individuals – Charles Herzka,

---

[1] The Court will also grant Defendants' Motion for Leave to File a Surreply [Dkt. No. 25], since it has considered defendants' arguments and plaintiff's response thereto.

1

Lazar Muller, Joseph Neumann, Samuel Weiss, and David Weldler (collectively, the "Individual Defendants").[2]

Pursuant to a Marketing Agreement ("the contract") between plaintiff and defendant Broadway Mass Associates, LLC (Am. Compl. ¶ 44 & Ex. 1 (McWilliams/Ballard, Inc. Marketing Agreement for Broadway Mass. Associates, LLC) ["Marketing Agreement"] at 1), plaintiff marketed units in a condominium development in northwest Washington, D.C. ("the Dumont Development") (*id*. ¶¶ 44, 45, 49), distributed contracts to prospective purchasers, and made substantial preparations to coordinate purchaser settlements. (*Id.* ¶ 60.) On September 18, 2008, plaintiff terminated the contract based on defendants' alleged misrepresentations as to the imminence of settlements with purchasers and the Dumont Development's finances and real estate tax documentation. (*Id.* ¶¶ 62-73.) Three months later, after defendants and the Dumont Development defaulted on the loans, lenders began foreclosure proceedings. (*Id.* ¶ 43.)

Plaintiff's amended complaint contains six counts against all defendants: breach of contract, fraud, negligent misrepresentation and constructive fraud, unjust enrichment, civil conspiracy to commit fraud, and aiding and abetting fraud. Plaintiff claims that defendants breached the contract by, *inter alia*, failing to keep plaintiff "reasonably and seasonably apprised of all material facts that would reasonably bear on [plaintiff's] marketing" of the Dumont Development units. (Am. Compl. ¶ 73; Marketing Agreement at 2.) Plaintiff also alleges fraud by the Broadway LLCs based on alleged misrepresentations by their agents. (Am. Compl. ¶¶ 20-24, 64, 92, 108-10,118-25.) Namely, plaintiff claims that Herzka and Weldler, as well as non-defendant employees of the Broadway LLCs, repeatedly told plaintiff to notify unit purchasers that settlements would occur according to a sixty-day schedule and that defendants had

---

[2] Plaintiff claims each of the Individual Defendants was an "owner, manager, member, director, or officer of some and/or all of the [Broadway LLCs]." (Am. Compl. ¶¶ 20-24.)

submitted the appropriate tax documents, despite knowing that the Dumont Development was failing and the tax documents, in fact, had not been submitted. (*See* Am. Compl. ¶¶ 62-65, 67, 69-71, 75, 119, 123.) Plaintiff also alleges that Herzka "informed Christopher Ballard . . . that Defendants were intentionally delaying the settlements of the Dumont Project to avoid Defendants risking financial losses." (Am. Compl. ¶ 71.) Plaintiff further alleges that the Individual Defendants and Broadway LLCs,

> (1) fail[ed] to maintain separate or adequate corporate records and books; (2) ha[d] Dumont Project invoices and notices addressed to different [Broadway LLCs], (3) pa[id] Dumont Project invoices from various accounts under different [Broadway LLCs'] names, (4) shar[ed] company staff and property, (5) shar[ed] bank accounts, (6) divert[ed] company funds to non-corporate uses, such as the personal uses of the Individual Defendants, and vice-versa, (7) transferr[ed] cash among [Broadway LLCs] and Individual Defendants . . . (8) fail[ed] to properly capitalize the [Broadway LLCs], and (9) us[ed] the same business location and mailing address for all [d]efendants[.]

(Pl.'s Mem. at 9; Am. Compl. ¶¶ 25, 31-43, 61-72, 89-110.)

Plaintiff now seeks leave to amend its complaint to include the New Broadway LLCs and the Individual Defendants, as well as additional factual allegations regarding the Original Broadway LLCs. (Pl.'s Mem. at 1-2.) Plaintiff asserts two theories for suing the new defendants; 1) plaintiff seeks to pierce the corporate veil of the Broadway LLCs, alleging that they are alter egos of each other and of the Individual Defendants, and 2) plaintiff claims that each of the Individual Defendants should be held liable for his own tortious conduct as an officer of one or more of the Broadway LLCs. (Pl.'s Mem. at 8 & n.6, 12.)

## ANALYSIS

### I. MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

After a defendant has filed a responsive pleading, "a plaintiff [must] first seek leave of court or obtain the opposing party's written consent before filing [an] amended complaint."

3

*Banks v. York*, 448 F. Supp. 2d 213, 215 (D.D.C. 2006); Fed. R. Civ. P. 15(a). "The decision to grant leave to amend a complaint is left to the court's discretion," *Banks*, 448 F. Supp. 2d at 215 (citing *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996), but the court must "heed Rule 15's mandate that leave is to be 'freely given when justice so requires.'" *Amore ex. rel. Amore v. Accor N. Am., Inc.*, 529 F. Supp. 2d 85, 92 (citing *Firestone*, 76 F.3d at 1208). "[I]t is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive . . .[or] futility of amendment." *Banks*, 448 F. Supp. 2d at 215 (citing *Firestone*, 76 F.3d at 1208 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))). In this case, the only issue presented is futility, and defendants may prevail on this ground if they can show that "the proposed claim would not survive a motion to dismiss." *Amore*, 529 F. Supp. 2d at 92 (citing *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996)).

To survive a motion to dismiss, a complaint must satisfy Federal Rule of Civil Procedure 8(a)(2)[3] or, when pleading fraud, Rule 9(b). *See Bell Atlantic v. Twombly*, 550 U.S. 544, 554-55, 570 (2007) (holding that a complaint must "state a claim to relief that is plausible on its face"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

> Determining whether a complaint states a plausible claim for relief will. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense[,]. . . [b]ut where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'

*Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

---

[3] Rule 8(a)(2) states, in relevant part, "A pleading that states a claim for relief must contain: . . .a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."

Rule 9(b) requires a party "alleging fraud…[to] state with particularity the circumstances constituting fraud or mistake," but allows "[m]alice, intent, knowledge and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b).

## II.   FRAUD CLAIMS

Of the six counts in plaintiff's amended complaint, defendants' primary challenge is to plaintiff's claims based on fraud.[4]  Under D.C. law,[5] "[o]ne pleading fraud must allege such facts as will reveal the existence of . . . (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action . . . taken in reliance upon the representation." *Bamba v. Resource Bank*, 568 F. Supp. 2d 32, 34 (D.D.C. 2008) (quoting *Bennett v. Kiggins*, 377 A.2d 57, 59-60 (D.C. 1977)).  A claim for fraud may be founded on a false representation or a willful omission. *See Bell v. Rotwein*, 535 F. Supp. 2d 137, 144 (D.D.C. 2008).  To satisfy Rule 9(b), "the pleader [must] state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud[,]. . . and identify individuals allegedly involved in the fraud." *United States ex. rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citing *Kowal v. MCI Commc'ns, Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)); *Quality Air Servs., LLC v. Milwaukee Valve Co.*, 567 F. Supp. 2d 96, 103 (D.D.C. 2008).

Defendants oppose plaintiff's fraud claims on several grounds.  First, defendants claim that in order to plead its fraud-based claims against the Broadway LLCs, plaintiff must make factual allegations of "particular wrongdoing. . . against the Broadway LLCs as entities separate

---

[4] Plaintiff's fraud claims include fraud (Count II), negligent misrepresentation and constructive fraud (Count III), civil conspiracy to commit fraud (Count V), and aiding and abetting fraud (Count VI).

[5] The parties agree that D.C. law governs plaintiff's veil-piercing and fraud-based claims. (*See* Pl.'s Mot. at 8-12; Pl.'s Reply at 2, 4; Defs.' Opp'n at 9-14, 28, 32-35.)

5

and distinct from the [I]ndividual Defendants." (Defs.' Opp'n at 27 n.8.) Second, defendants claim the alleged false statements by Individual Defendants and other employees of the Broadway LLCs are either "instructions," not misrepresentations (*id.* at 29-30), or are not pled with sufficient particularity. (*Id.*) Finally, defendants claim their alleged failures to notify plaintiff of the status of the Dumont Development loans and tax documents and to disclose their delay of settlements do not constitute false representations or material omissions. (*Id.* at 32.)

This Court does not agree. Plaintiff may base its fraud claims against the Broadway LLCs on their vicarious liability for the alleged false statements and omissions made by their agents or officers (*i.e.* Herzka, Weldler, and other employees). *See, e.g.*, *Meyer v. Holley*, 537 U.S. 280, 286 (2003) ("[T]he corporation. . . [is] subject to vicarious liability for torts committed by its employees or agents."). (*See* Am. Compl. ¶¶ 20-24, 64, 92, 108-10, 118-25.) This Court also finds plaintiff's amended complaint contains sufficient specific allegations as to misrepresentations (especially those made by Herzka and Weldler), omissions, and the other elements of common law fraud to satisfy the D.C. requirements and Rule 9(b).[6] (*See* Am. Compl. ¶¶ 60, 62-71, 74-75, 92, 101, 103-07, 119-25, 130, 139.) *See Martin-Baker*, 567 F. Supp. 2d at 103 (citations omitted).

Defendants' attempt to distinguish instructions from misrepresentations is without force. Weldler's instruction to plaintiff to "send out letters setting final settlement dates for. . . purchasers," despite not having "filed the necessary documents to obtain the real estate tax identifications. . ., which [d]efendants had previously told [plaintiff] would, in fact, be obtained

---

[6] Rule 9(b) permits a plaintiff to plead generally "malice, intent, knowledge and other conditions of a person's mind." Plaintiff's amended complaint contains sufficient general allegations to plead the "knowledge of falsity" and "intent to induce reliance" elements of fraud. (*See* Am. Compl. ¶¶ 60-71, 80, 120-25, 131.)

before any settlements would occur on any of the Dumont condominiums" (Am. Compl. ¶ 70), plausibly misrepresented the Broadway LLCs' readiness to proceed to settlements.

Defendants' attacks on the particularity with which plaintiff pleads the false misrepresentations and omissions underlying its fraud claims are also unconvincing. Defendants demand that plaintiff plead "how" various defendants communicated their false misrepresentations (Defs.' Opp'n at 29-30), even though there is no legal requirement that this be done. *See Martin-Baker*, 389 F.3d at 1256 (citing *Kowal*, 16 F.3d at 1278). Additionally, plaintiff's allegations that misrepresentations were made over the telephone or via e-mail are sufficient to meet the "place" element. *See Benz v. Washington Newspaper Publ'g Co., LLC*, 2007 WL 1794104, at *3 (D.D.C. June 19, 2007) (denying a motion to dismiss a fraud claim where the only location alleged for the misrepresentation was "via e-mail"); *Punski v. Karbal*, 2009 WL 196317, at *3 (N.D. Ill. Jan. 28, 2009) (finding plaintiff had sufficiently pled the "where" of her fraud claim by alleging a misrepresentation "over the telephone"). Finally, plaintiff *does* allege what defendants retained by making false misrepresentations and omissions – plaintiff's marketing services. (*See* Am. Compl. ¶ 121.)

Furthermore, defendants' argument (Defs.' Opp'n at 32) that this Court's ruling in *Bamba* precludes alleged omissions from constituting "false representations" is incorrect. The Court's ruling in *Bamba*, where plaintiff's thin allegations (or mere suggestions) that defendant's failure to disclose information or return phone calls did not sufficiently show false representations, *Bamba*, 568 F. Supp. 2d at 33-34, cannot be extended to the facts presented by this case.

In sum, the fraud claims (with the exception of constructive fraud) are adequate to defeat defendants' motion to dismiss.[7] Therefore, this Court will turn to the question whether plaintiff may add the Individual Defendants and New Broadway LLCs based on the theory of piercing the corporate veil and based on allegations of direct participation in (or aiding and abetting) the fraud alleged in Counts II, III, V, and VI.

---

[7] The elements of fraud and negligent misrepresentation are similar. *See, e.g.*, *In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 58, 74 n.9 (D.D.C. 2003). Unique to negligent misrepresentation are the requirements of: 1) a false statement in violation of a duty to exercise reasonable care, *Rotwein*, 535 F. Supp. 2d at 144, and 2) "in the commercial context," plaintiff's *objectively* reasonable reliance. *Office Prods.*, 251 F. Supp. 2d at 74. The factual allegations supporting plaintiff's fraud claim are sufficient to support a claim for negligent misrepresentation. (*See* Am. Compl. ¶¶ 20-24, 60, 62-71, 74-75, 92, 101, 103-07, 108-10, 118-25, 130, 139.) Contrary to defendants' arguments (Defs.' Opp'n at 30-32), plaintiff's amended complaint specifically alleges a violation of a duty of reasonable care (*see* Am. Compl. ¶¶ 60-75, 77-80, 116, 119-23, 127, 130-31; Marketing Agreement), which is "owed by commercial suppliers of information . . . to those . . . intended to receive the information[,]" *Burlington Ins. Co. v. Okie Dokie, Inc.*, 329 F. Supp. 2d 45, 48-49 (D.D.C. 2004) (rejecting the argument that "parties to an arm's-length commercial transaction" owe no duty of care), and objectively reasonable reliance by plaintiff on defendants' false statements (*see* Am. Compl. ¶¶ 61, 66, 124, 128), given that defendants could reasonably be expected to work toward the Dumont Development's success and that defendants' statements were not inconsistent with the contract. *See Burlington*, 329 F. Supp. 2d at 49-50. (*See* Marketing Agreement at 2-3.) Finally, plaintiff alleges numerous injuries proximately resulting from defendants' false misrepresentations and omissions. (*See* Am. Compl. ¶¶ 74-80, 116-17, 119-23, 127-31.) At this stage, plaintiff need not allege "specifically what additional costs or expenses it incurred . . . or how specifically it was damaged by injury to its reputation" (*see* Defs.' Opp'n at 31), for damages may be proven at trial.

In addition to negligent misrepresentation, Count III includes constructive fraud. As defendants point out (*see* Defs.' Opp'n at 32-33), constructive fraud requires a "confidential relationship . . . between [plaintiff] and [d]efendant," by which the defendant is able to "exercise extraordinary influence over" the plaintiff. *Witherspoon v. Phillip Morris*, 964 F. Supp. 455, 461 (D.D.C. 1997) (citing *Goldman v. Bequai*, 19 F.3d 666, 673-74 (D.C. Cir. 1994)). Defendants claim (*see* Defs' Opp'n at 32-33) that plaintiff's amended complaint fails to plead any confidential relationship or extraordinary influence. Plaintiff does not dispute this. (*See* Pl.'s Reply.) This Court therefore concludes that the constructive fraud claim fails as a matter of law.

Finally, plaintiff adequately alleges a civil conspiracy and aiding and abetting (Counts V and VI). (*See* Am. Compl. ¶¶ 139-42, 144-45.) These claims, as defendant concedes (*see* Defs.' Opp'n at 33), are "a means for establishing vicarious liability for [an] underlying tort," *Cadet v. Draper & Goldberg, PLLC*, 2007 WL 2893418, at *14 (D.D.C. Sep. 28, 2008), and plaintiff has stated a valid fraud claim that forms the basis for these derivative claims.

**III.     PIERCING THE CORPORATE VEIL**

A lot of time has been needlessly wasted on lengthy and repetitive arguments on the law of piercing the corporate veil.  While it is true that courts applying D.C. law distinguish between alter ego cases that involve a "federal interest" and those that do not, *see United States Through Small Bus. Admin. v. Pena*, 731 F.2d 8, 10-13 (D.C. Cir. 1984); *Amore*, 529 F. Supp. 2d at 93, the difference between federal alter ego law[8] and D.C. alter ego law is immaterial.   The D.C. Court of Appeals has clearly enunciated the test as follows: "[g]enerally, the corporate entity will be respected, but a party may be permitted to pierce the corporate veil upon proof, 'that there is (1) unity of ownership and interest, and (2) use of the corporate form to perpetrate fraud or wrong,' or 'other considerations of justice and equity' justify it."  *Estate of Raleigh v. Mitchell*, 947 A.2d 464, 470 (D.C. 2008) (citing *Bingham v. Goldberg. Marchesano. Kohlman. Inc.*, 637 A.2d 81, 92 (D.C. 1994)).  Factors for determining when to pierce the corporate veil include, *inter alia*, "(1) whether corporate formalities have been disregarded, (2) whether corporate funds and assets have been extensively intermingled with personal assets, (3) inadequate initial capitalization, and (4) fraudulent use of the corporation to protect personal business from the claims of creditors."  *Estate of Raleigh*, 947 A.2d at 470-71.

Construing the factual allegations in plaintiff's amended complaint as true, as one must at this stage, this Court finds that plaintiff's allegations are sufficient to support a plausible inference that the New Broadway LLCs and the Individual Defendants are alter egos of the Original Broadway LLCs.

---

[8] Where a case implicates a federal interest, "[t]he question whether to disregard the corporate form. . . proceeds in two steps: '(1) is there such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist?; and (2) if the acts are treated as those of the corporation alone, will an inequitable result follow?'" *United States ex. rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 60 (D.D.C. 2007) (quoting *Labadie Coal Co. v. Black*, 672 F.2d, 92, 97 (D.C. Cir. 1982)).

9

Contrary to defendants' argument, plaintiff does not need to show actual fraud perpetrated through use of the corporate form. *See, e.g.*, *Bingham*, 637 A.2d at 93 (citing *Vuitch v. Furr*, 482 A.2d 811, 815) ("We have. . . reject[ed] the requirement that fraud must be shown."). "Considerations of justice and equity" can justify piercing the corporate veil. *Estate of Raleigh*, 947 A.2d at 470 (quoting *Vuitch*, 482 A.2d at 815). Nor does plaintiff have to show, as defendants argue, that "the corporate form was *misused* to work that injustice or inequity." (Defs.' Surreply at 2) (emphasis added). Having located only four cases since 1975 in which a court applied D.C. law to pierce the corporate veil, defendants claim that, in practice, veil-piercing is reserved for instances of such misuse of the corporate form. (Defs.' Surreply at 2-3.) While it may be true that plaintiffs have rarely been successful proceeding on this theory, what a plaintiff must show at the pleadings stage cannot be equated with what he needs to show to prevail at trial.[9]

Finally, defendants' argument that the factors relied on by plaintiff to pierce the corporate veil apply only to the "unity of interest and ownership" prong of the test is not persuasive. (Defs.' Opp'n at 19-20; Defs.' Surreply at 4-6). Courts look to those factors, among others, to satisfy the veil-piercing test. *See, e.g.*, *Estate of Raleigh*, 947 A.2d at 470-71; *Lawlor*, 758 A.2d at 975; *Camacho v. 1440 Rhode Island Ave. Corp.*, 620 A.2d 242, 249 & n.22 (D.C. 1993). "No single factor controls," *Lawlor*, 758 A.2d at 975, and "the factor which predominates will vary in

---

[9] In each of the four cases, the court based its decision on evidence presented at trial. *See Lawlor v. Dist. of Columbia*, 758 A.2d 964 (D.C. 2000) (affirming a bench trial ruling piercing corporate veils of two corporations); *Dist. of Columbia v. Campbell*, 580 A.2d 1295, 1303-04 (D.C. 1990) (affirming the trial judge's decision that the evidence was sufficient for the veil-piercing issue to be submitted to the jury); *Vuitch*, 482 A.2d at 813 (affirming the trial judge's denial of the defendants' motion for a directed verdict on alter ego liability); *Harris v. Wagshall*, 343 A.2d 283, 285-87 (D.C. 1975) (per curiam) (affirming the trial court's decision, based on its factual findings, to pierce the corporate veil and hold the Harrises liable for a judgment against a corporation wholly owned by Mrs. Harris), *overruled on other grounds by BWX Elecs., Inc. v. Control Data Corp.*, 929 F.2d 707, 712 (D.C. Cir. 1991).

each case." *Camacho*, 620 A.2d at 249. Defendants rely heavily on *Jackson v. Loews Washington Cinemas, Inc.*, 944 A.2d 1088 (D.C. 2008), in which the court found "complete unity of interest and ownership. . . [in] the first step[,]" but declined to pierce the corporate veil because appellant offered "no evidence (*or claim*) of fraud," and did not "argue[] that injustice w[ould] result." *Id.* at 1096-97 (emphasis added). Plaintiff in this case, on the other hand, repeatedly alleges fraud and injustice, and alleges facts showing more of the enumerated factors than the *Jackson* appellant proved at trial. *Id.* at 1096 (noting that appellant did not dispute that appellees preserved corporate formalities and maintained separate funds, books, and offices.).

In particular, plaintiff alleges that the Broadway LLCs were "grossly undercapitalized given the risks associated with the Dumont Project and the large amount of debt…undert[aken] to finance it." (Pl.'s Mem. at 11; Am. Compl. ¶¶ 25, 31, 32, 34, 43, 91, 97, 102.) Plaintiff also alleges that the Individual Defendants dominated the Broadway LLCs (*see* Am. Compl. ¶¶ 2-24, 31-43, 103-07), and that all defendants disregarded corporate formalities and commingled corporate and personal funds and assets. (*See* Am. Compl. ¶¶ 25, 89-110.) Plaintiff further alleges the Individual Defendants created the Broadway LLCs to protect themselves from liability in their personal entrepreneurial ventures. (*See* Am. Compl. ¶¶ 31-43, 89-98, 100-07.) These allegations satisfy Rule 8(a)(2) and *Iqbal*, and thus, they state a claim for piercing the corporate veil.[10] *See Estate of Raleigh*, 947 A.2d at 470-71 (undercapitalization can be important

---

[10] Plaintiff, therefore, may add the Individual Defendants and New Broadway LLCs as defendants to its fraud claims (Counts II, III, V and VI) (with the exception of constructive fraud), to its breach of contract claim (Count I), *see Arthur Andersen LLP v. Carlisle*, 129 S. Ct. 1896, 1902 (2009) (a contract may "be enforced by or against non-parties to the contract through . . . piercing the corporate veil" (internal quotation marks omitted)), and to its unjust enrichment claim (Count IV). While defendants are correct (Defs.' Opp'n at 27 n.9) that plaintiff ultimately cannot recover under both a breach of contract claim and an unjust enrichment claim pertaining to the subject matter of that contract, *see 3D Global Solutions, Inc. v. MVM*, 552 F. Supp. 2d 1, 10 (D.C. Cir. 2008) (citing *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870

to a court's determination whether to pierce the corporate veil); *Vuitch*, 482 A.2d at 819 (citing *McAuliffe v. C & K Builders*, 142 A.2d 605, 607 (D.C. 1958)) (same); *Harris*, 343 A.2d at 287-88 (same).

## IV.   INDIVIDUAL OFFICERS' LIABILITY FOR THEIR OWN TORTIOUS CONDUCT

Under its second theory of liability, Plaintiff argues that the Individual Defendants, as corporate officers, should be held liable for the tort counts based on their individual acts and omissions. Under D.C. law, "corporate officers 'are personally liable for torts which they commit, participate in, or inspire, even though the acts are performed in the name of the corporation.'" *Perry*, 590 F. Supp. 2d at 18. "Liability must be premised upon a corporate officer's meaningful participation in the wrongful acts. . . [which] can exist when there is an *act or omission* by the officer which logically leads to the inference that he had a share in the wrongful acts of the corporation which constitute the offense." *Id.* (quoting *Lawlor*, 758 A.2d at 977) (emphasis in original). While a corporate officer "need not have been actively involved in the tortious activity. . . [and] can be liable for merely failing to act," *Evans v. Washington Ctr. for Internships and Academic Seminars*, 587 F. Supp. 2d 148, 152 (D.D.C. 2008), liability cannot be "based merely on the officer's position in the corporation." *Perry*, 590 F. Supp. 2d at 18 (quoting *Lawlor*, 758 A.2d at 977). However, a failure to act may constitute meaningful participation based on the affirmative responsibilities conferred on an officer by her position. *See Perry*, 590 F. Supp. 2d at 22.

Since this Court holds that plaintiff's amended complaint sufficiently pleads fraud by the Broadway LLCs, this Court must decide whether plaintiff's allegations are sufficient to sustain a

---

A.2d 58, 64 (D.C. 2005); *S. Biscuit Co. v. Lloyd*, 6 S.E.2d 601, 606 (Va. 1940)), at this juncture, plaintiff's unjust enrichment claim is an alternate theory of liability which it may pursue.

claim that the Individual Defendants participated meaningfully in the acts or omissions on which the fraud claim is based, or alternatively, failed to act to prevent those acts or omissions despite an affirmative responsibility to do so.

Plaintiff has alleged that each of the Individual Defendants participated in the Broadway LLCs' fraudulent conduct. Indeed, Herzka's and Weldler's alleged misrepresentations and omissions (*see* Am. Compl. ¶¶ 67, 70, 71) form the very basis for plaintiff's fraud claims. In this case, plaintiff's allegations supporting veil-piercing also support the plausible inference that each of the Individual Defendants was a meaningful participant in the alleged fraud. (*See* Am. Compl. ¶¶ 20-24, 61-71, 91-97, 100, 103-07, 110, 131.) This is not an uncommon result. For example, the court in *Lawlor*, reviewing an appeal from a bench trial, held that "the conduct that led the trial judge to impose personal liability on [the defendant] as a corporate shareholder also warranted imposition of liability as a corporate officer." 758 A.2d at 977. The evidence in *Lawlor* of the defendant's domination of the corporation to "engineer the actions which. . . caused the corporation to become unable to compensate its employees," *id.* at 975-77, was arguably greater than what plaintiff pleads in its amended complaint, but plaintiff need "not *prove*[] [the Individual Defendants'] involvement in the alleged [fraud]" at this early stage of the proceedings, *Cooper v. First Gov't Mortgage & Investors Corp.*, 206 F. Supp. 2d 33, 36 (D.D.C. 2002) (citing *ACLU Found. of S. Cal. v. Barr,* 952 F.2d 457, 467 (D.C. Cir. 1991)), for "plaintiff[] [is] entitled to offer evidence at a later time to support these claims." *Id.*

## CONCLUSION

For the aforementioned reasons, the Court concludes that plaintiff's Motion for Leave to File Amended Complaint is **GRANTED** as to Counts I, II, IV, V and VI, and as to the negligent

misrepresentation claim (but not the constructive fraud claim) in Count III.

**SO ORDERED.**

                                                            /s/
                                                ELLEN SEGAL HUVELLE
                                                United States District Judge

DATE:   July 7, 2009